**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WISCONSIN**

**ALIHYA NATALIE JOHNSON,**
**individually and as next friend of her**
**minor children,**

**SIBLING 1 and SIBLING 2,**

       Plaintiffs,

        V

**CITY OF MILWAUKEE, a Wisconsin**
**municipal corporation; OFFICER JAMES**
**SUMMER in his individual capacity,**
**OFFICER AUSTIN DOMAGALSKI in his**
**individual capacity, and UNKNOWN**
**MILWAUKEE POLICE OFFICERS, and**

**ABC INSURANCE COMPANY,**

       **Defendants.**

**JURY TRIAL DEMANDED**

CASE NO _____

---

## COMPLAINT

Plaintiffs ALIHYA NATALIE JOHNSON, individually and as next friend of her minor children SIBLING 1 and SIBLING 2, by and through their attorney, IMRAN KURTER, ESQ., hereby allege and complain against Defendants as follows;

### PRELIMINARY STATEMENT

This is a civil rights actions arising from the unlawful detention of Alihya Natalie Johnson, a pregnant woman, by officers of the City of Milwaukee Police Department on April 2, 2023. Despite the lack of any criminal culpability, officers detained Ms. Johnson in handcuffs in the back of a police squad car for over forty minutes, ignoring her repeated protests that she was

1

pregnant, that she was in extreme discomfort, and that her detention was unlawful. Officers further coerced Ms. Johnson into calling a third party to facilitate his surrender and compelled her to provide the password to her personal cell phone, all while she reported escalating abdominal pain. Within three weeks of the incident, Ms. Johnson suffered a miscarriage and lost her unborn child. This action seeks redress for the violation of Ms. Johnson's constitutional rights and for the wrongful death of her unborn child.

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction pursuant to U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same nucleus of operative fact as the federal claim.

3. Venue is proper in the Easter District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Milwaukee, Wisconsin, and Defendants reside and operate within this district.

4. Plaintiffs timely served a Notice of Claim upon the City of Milwaukee on June 1, 2023, in compliance with Wis. Stat. § 893.80, et seq. More than 120 days have elapsed without denial of the claim.

## THE PARTIES.

5. Plaintiff ALIHYA NATALIE JOHNSON, is an adult resident of Milwaukee, Wisconsin. At all times relevant herein, she was a pregnant woman lawfully present in the City of Milwaukee.

2

6. Plaintiff SIBLING 1 is a minor child and a surviving sibling of the deceased unborn child. Alihya Natalie Johnson brings this action on behalf of Sibling 1 as next friend and parent.

7. Plaintiff SIBLING 2 is a minor child and a surviving sibling of the deceased unborn child. Alihya Natalie Johnson brings this action on behalf of Sibling 2 as next friend and parent.

8. Defendant CITY OF MILWAUKEE is a Wisconsin municipal corporation organized and existing under the laws of the State of Wisconsin. At all relevant times, the City of Milwaukee operated the Milwaukee Police Department and was responsible for the hiring, training, supervision and retention of its police officers.

9. Defendant OFFICER JAMES SUMMER is, upon information and belief, duly employed police offer of the City of Milwaukee who participated in the detention and restraint of Ms. Johnson on April 3, 2023.

10. Defendant OFFICER AUSTIN DOMAGALSKI is, upon information and belief, duly employed police offer of the City of Milwaukee who participated in the detention and restraint of Ms. Johnson on April 3, 2023.

11. Defendants UNKNOWN MILWAUKEE POLICE OFFICERS are other officers of Milwaukee Police Department who were present at and/ or participated in the events alleged herein. Their identities will be ascertained through discovery.

12. Defendant ABC Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing insurance policies within the State of Wisconsin. Upon information and belief, prior to and including all relevant times herein, ABC issued a policy of liability insurance to The City of Milwaukee and all its employees and/or agents thereof. By the terms of said policy, ABC agreed to pay any and all sums for which The City of Milwaukee

3

and/or its agents and employees might be held legally liable for injuries or damage caused by The City of Milwaukee and/or its employees and agents. Upon information and belief, said ABC insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, ABC Insurance Company is a proper party to this action.

13. At all relevant times, all individuals acted under color of state law within the scope of the employment with the City of Milwaukee.

## FACTUAL ALLEGATIONS

14. On the evening of April 3, 2023, at approximately Plaintiff Alihya Natalie Johnson was lawfully operating a motor vehicle within the City of Milwaukee, Wisconsin. Seated as a passenger in the vehicle was Deandre D. Hill, the father of Ms. Johnson's two minor children, who were also present in the vehicle at the time.

15. Ms. Johnson proceeded to 5230 N. Sherman Boulevard, the residence she shared with Mr. Hill, and lawfully parked the vehicle. Upon parking, Mr. Hill, aware that an outstanding warrant had been issued for his arrest, seized the vehicle keys, which also contained keys to the shared apartment, exited the vehicle, and fled on foot to barricade himself inside the apartment before police could arrive on scene.

16. Officers of the Milwaukee Police Department arrived at 5230 N. Sherman Boulevard shortly thereafter and began question Ms. Johnson. At no point during this encounter had Ms. Johnson committed any criminal offense, engaged in any suspicious conduct, or provided any lawful basis upon which officers could detain her. Her sole connection to the situation was her personal relationship with Mr. Hill and her physical presence at their shared residence.

17. Notwithstanding her complete absence of culpability, and despite the presence of her minor children nearby, officers placed Ms. Johnson in handcuffs and confined her in the rear seat

4

of a police squad car. Ms. Johnson immediately and repeatedly protested her detention, informing officers that she was pregnant, that the handcuffs were causing her significant physical discomfort, and that being confined and contorted in the rear of the squad car was causing her pain. Officers disregarded her protestations entirely.

18.     Officers then directed Ms. Johnson, while handcuffed and confined in the squad car, to place a telephone call to Mr. Hill and instruct him to surrender himself to police. Ms. Johnson, under compulsion and without any legal obligation to do so, complied with this directive. Mr. Hill refused to surrender.

19.     Officers thereafter demanded that Ms. Johnson provide them with the password necessary to unlock her personal cellular telephone. Ms. Johnson, in fear for the safety of her unborn child and out of concern for the welfare of her minor children, and acting entirely under duress, disclosed her password as demanded. Officers accessed her device without a warrant and without any lawful authorization.

20.     Ms. Johnson remained handcuffed and confined in the rear of the squad car for a period exceeding forty minutes. Throughout this period, she continued to report physical discomfort and abdominal pain to the officers present. No officer offered or arranged for medical assistance of any kind.

21.     Officers ultimately secured Mr. Hill's surrender through negotiation. Following this resolution, when Ms. Johnson raised her ongoing complaints of abdominal pain and physical distress, an officer responded only that "we did what we had to do... you should understand that." No medical evaluation was offered, and Ms. Johnson was released without any inquiry into her condition.

5

22. Within three weeks of the April 3, 2023 incident, Plaintiff Alihya Natalie Johnson suffered a miscarriage and lost her unborn child. The miscarriage was the direct and proximate result of the physical trauma, physiological stress, and bodily harm occasioned by Defendants' unlawful detention and treatment of Ms. Johnson on that date.

23. At the time of the miscarriage, Ms. Johnson's unborn child was viable within the meaning of applicable Wisconsin law.

24. As a consequence of Defendants' conduct, Ms. Johnson has suffered and continues to suffer severe physical injury, emotional pain and anguish, grief attendant to the loss of her unborn child, lost income, and substantial medical expenses. Plaintiffs Sibling 1 and Sibling 2, who were minors at the time of their sibling's death, have sustained the loss of society and companionship of their unborn sibling, for which they are each entitled to seek damages pursuant to Wis. Stat. Section 895.04(4).

## COUNT I
### 42 U.S.C. § 1983 - Fourth Amendment: Unlawful Seizure / False Arrest
### (Against All Individual Defendants)

25. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

26. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right of persons to be free from unreasonable seizures of their person. A seizure occurs when a government official, by means of physical force or show of authority, restrains the liberty of a citizen.

27. A claim for false arrest under 42 U.S.C. § 1983 requires a plaintiff to demonstrate the absence of probable cause at the time of the arrest or detention. *Braun v. Village of Palatine*, 56 F.4th 542 (7th Cir. 2022). Probable cause exists when the facts and circumstances known to the

6

officer would lead a prudent person to believe that the individual has committed, is committing, or is about to commit a crime. *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019).

28. At the time Defendants detained Ms. Johnson, no such facts or circumstances existed. Ms. Johnson had committed no criminal offense. She was not suspected of any crime. She was the lawful operator of a parked vehicle who had done nothing more than arrive at her own residence in the company of a passenger who was separately subject to an outstanding warrant. Her presence at the scene, standing alone, provided no basis upon which a prudent officer could reasonably believe she had committed, was committing, or was about to commit a crime.

29. Unlike the circumstances in *Martin v. Marinez*, where probable cause for arrest was established by the subsequent discovery of contraband during the encounter, no such intervening facts arose here. There was no post-stop discovery of facts that could retroactively supply probable cause. The detention was constitutionally defective from its inception and remained so throughout its duration.

30. The Seventh Circuit has further held that detention without probable cause violates the Fourth Amendment both before and after the initiation of legal proceedings. *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019). Ms. Johnson's confinement in the rear of a squad car in handcuffs for a period exceeding forty minutes, without probable cause at any point during that period, constituted a continuing Fourth Amendment violation for the full duration of her detention.

31. Defendants may raise qualified immunity as a defense. However, qualified immunity does not shield an officer where a reasonable officer could not have mistakenly believed that probable cause existed. *Fleming v. Livingston County*, 674 F.3d 874 (7th Cir. 2012). No reasonable officer, confronted with the circumstances present here, a pregnant woman with no

7

criminal history, no suspicious conduct, and no connection to any offense other than her personal relationship with a third party subject to a warrant, could have reasonably believed that probable cause existed to detain her. The absence of any articulable criminal conduct attributable to Ms. Johnson forecloses any good faith argument that a reasonable officer could have mistakenly believed detention was constitutionally permissible.

32. As a direct and proximate result of Defendants' unlawful seizure of Ms. Johnson's person without probable cause, Ms. Johnson suffered physical injury from being handcuffed and confined, severe emotional distress, the wrongful death of her unborn child, lost wages, medical expenses, and such other damages as will be proven at trial.

**COUNT II**
**42 U.S.C. § 1983 — Fourth Amendment: Unreasonable Search (Cell Phone)**
**(Against All Individual Defendants)**

33. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

34. The Supreme Court established in *Riley v. California*, 573 U.S. 373 (2014), that a warrant is required before officers may search a cell phone, even incident to a lawful arrest. The Seventh Circuit has consistently reaffirmed this principle. *United States v. Bell,* 925 F.3d 362 (7th Cir. 2019); *United States v. Vizcarra-Millan*, 15 F.4th 473 (7th Cir. 2021).

35. Defendants compelled Ms. Johnson, while unlawfully detained and under duress, to disclose the password to her personal cell phone and thereafter accessed its contents. No warrant was obtained. No recognized exception to the warrant requirement applied.

36. Consent obtained during an unlawful detention is legally invalid, as it is the product of coercion rather than a free and voluntary act. Because Ms. Johnson's detention was itself

8

unconstitutional, any purported consent to the cell phone search was fatally tainted by that underlying illegality.

37.     Defendants' warrantless and coerced search of Ms. Johnson's cell phone constituted an unreasonable search in violation of the Fourth Amendment.

38.     As a direct and proximate result, Ms. Johnson suffered a violation of her privacy rights and the additional emotional distress and physical consequences alleged herein.

**COUNT III**

**42 U.S.C. § 1983 — Fourteenth Amendment: Substantive Due Process**

**(Against All Individual Defendants)**

39.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

40.     To establish a substantive due process, claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived her of a constitutionally protected liberty interest without due process of law. *Polenz v. Parrott,* 883 F.2d 551 (7th Cir. 1989). At all relevant times, Defendants acted under color of state law in their capacity as officers of the Milwaukee Police Department.

41.     Ms. Johnson possessed a constitutionally protected liberty interest in her bodily integrity and in the continuation of her pregnancy. Defendants' affirmative acts of detaining her without lawful cause, physically restraining her in a manner causing her pain, and compelling her cooperation under duress created and materially increased the danger to her person and to her unborn child.

42.     Where officials have the opportunity for forethought and deliberation, the governing constitutional standard is deliberate indifference. *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir.

9

1998). Officers had actual knowledge that Ms. Johnson was pregnant and in physical distress. They nonetheless prolonged her confinement, withheld medical attention, and dismissed her complaints with indifference, satisfying that standard.

43.     Conduct that recklessly and gratuitously endangers an individual in custody shocks the conscience within the meaning of the Fourteenth Amendment. *McDowell v. Village of Lansing*, 763 F.3d 762 (7th Cir. 2014). The totality of Defendants' conduct meets that threshold.

44.     As a direct and proximate result of Defendants' deliberate indifference, Ms. Johnson suffered a miscarriage, the wrongful death of her unborn child, and all other damages alleged herein.

## COUNT IV
## 42 U.S.C. § 1983 — Monell Municipal Liability
### (Against Defendant City of Milwaukee)

45.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

46.     Municipal liability under 42 U.S.C. § 1983 attaches when a constitutional violation is caused by: (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority. *Gonzalez v. McHenry County*, 40 F.4th 824 (7th Cir. 2022). In each instance, the plaintiff must establish a direct causal link between the municipal action and the deprivation of federal rights, demonstrating that the policy, custom, or decision was the moving force behind the constitutional violation. *Milchtein v. Milwaukee County*, 42 F.4th 814 (7th Cir. 2022). Municipal liability is distinct from respondeat superior liability and requires scrupulous attention to each element: an underlying constitutional violation, a municipal policy or custom, causation, and municipal fault. *Id.*

10

47. Municipal liability does not arise from the isolated conduct of individual employees. A plaintiff must identify conduct attributable to the municipality itself and must demonstrate that the municipality acted with deliberate indifference to the known risk of constitutional violations. *First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021). Deliberate indifference is a demanding standard requiring more than negligence, but it is satisfied where a municipality disregards an obvious and well-recognized risk that its policies, practices, or training deficiencies will result in constitutional harm to the individuals its officers encounter.

48. Plaintiff alleges that the City of Milwaukee, through its Police Department, maintained one or more of the following unconstitutional policies, customs, or practices that were the moving force behind the violations suffered by Ms. Johnson:

   a. An express policy or widespread unwritten custom authorizing or permitting officers to detain individuals who had no personal involvement in any suspected offense and bore no criminal culpability, solely on the basis of their association or cohabitation with a person subject to an outstanding warrant;

   b. An express policy or widespread unwritten custom permitting or condoning the use of detained individuals as instruments to facilitate the apprehension of third parties, without regard to the detainee's constitutional rights, physical condition, or repeated protests of unlawful confinement;

   c. An express policy or widespread unwritten custom permitting officers to compel detainees to disclose the passwords to their personal cellular devices and to access the contents of those devices without a warrant and in the absence of any recognized exception to the warrant requirement established under *Riley, 573 U.S. at 386*) and

11

d. A policy of inaction amounting to deliberate indifference to the need to adequately train, supervise, and discipline officers with respect to: the constitutional limitations on bystander detention authority; the proper treatment of pregnant individuals in police custody; and the requirements governing warrantless cell phone searches.

49. Where a municipality maintains a policy of inaction in the face of an obvious and recurring risk of constitutional violations, that inaction constitutes the functional equivalent of an affirmative decision to permit such violations. *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020). The risk that Milwaukee Police Department officers would unlawfully detain innocent bystanders, conscript detainees into facilitating arrests, and disregard the urgent medical needs of pregnant women in custody was not a remote or speculative possibility. It was an obvious, foreseeable, and preventable consequence of the City's sustained failure to implement constitutionally adequate training, supervision, and accountability measures.

50. A plaintiff relying on a failure to train or a pattern of prior violations must demonstrate that the municipality had actual or constructive notice of the risk of constitutional violations through either a documented pattern of similar past conduct or a risk so obvious that deliberate indifference may be inferred. *Holloway v. City of Milwaukee*, 43 F.4th 760 (7th Cir. 2022). Plaintiff will establish through discovery that the Milwaukee Police Department had such notice, including through prior civilian complaints, internal affairs records, use of force reports, and departmental training materials reflecting the inadequacy of officer instruction on the constitutional boundaries of detention and the handling of medically vulnerable detainees.

51. Plaintiff's Monell allegations are not founded upon isolated incidents or bare conclusory assertions, which are insufficient as a matter of law to establish municipal liability. *Liska v. Dart*,

12

60 F. Supp. 3d 889 (N.D. Ill. 2014). Rather, the policies and customs alleged herein reflect conduct so persistent, widespread, and deeply embedded within the operations of the Milwaukee Police Department as to constitute a custom or usage carrying the full force of law, the existence and scope of which will be fully established through the discovery process.

52.     Each of the unconstitutional policies, customs, and training deficiencies identified herein was a direct and proximate cause of the violations suffered by Ms. Johnson on April 3, 2023. But for the City of Milwaukee's deliberate indifference to the constitutional rights of individuals encountered by its officers, Ms. Johnson would not have been unlawfully detained, physically restrained, coerced, or deprived of medical attention. The City's conduct was the moving force behind the miscarriage she suffered, the wrongful death of her unborn child, and all other damages alleged herein for which Plaintiff now seeks redress.

**COUNT V**

**Wrongful Death , Wis. Stat. §§ 895.03 and 895.04**

**(Against All Defendants)**

53.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

54.     Wisconsin Statute § 895.03 provides that a wrongful death action may be maintained when the death of a person is caused by the wrongful act, neglect, or default of another, provided that the deceased person would have been entitled to maintain an action for damages had they survived. Wisconsin Statute § 895.04 specifies the parties entitled to bring such an action and the categories of damages recoverable thereunder.

55.     Wisconsin law recognizes viable unborn children as persons within the meaning of the wrongful death statute. The Wisconsin Supreme Court first established this principle in *Kwaterski v. State Farm Mutual Automobile Insurance Co.*, 34 Wis. 2d 14 (1967), holding that a viable

13

unborn child who sustains an injury resulting in stillbirth is a person for purposes of the wrongful death statute, thereby entitling the parents to maintain a wrongful death action. The court defined viability as the capacity of the unborn child to live outside the womb, even with medical assistance.

56. The Wisconsin Supreme Court has consistently reaffirmed this principle. In *Pierce v. Physicians Insurance Co. of Wisconsin, Inc.*, 2005 WI 14, the court reiterated that a viable unborn child whose stillbirth is proximately caused by a wrongful act qualifies as a person under the wrongful death statute. In *Shannon E.T. v. Alicia M.V.M.* (In re C.A.V.M.), 2007 WI 29, the court further confirmed that parents may bring a wrongful death action for a viable fetus that was stillborn as a result of injury. This body of authority establishes the controlling legal framework for the claim presented herein.

57. At the time of the April 3, 2023 incident, Ms. Johnson's unborn child was viable within the meaning established by Kwaterski and its progeny, that is, capable of surviving outside the womb with medical assistance. Plaintiff will establish the gestational age and viability of the unborn child through medical records, prenatal documentation, and expert testimony as necessary.

58. The wrongful death of Ms. Johnson's unborn child was the direct and proximate result of Defendants' unlawful detention, physical restraint, deliberate indifference to her medical condition, and the physical trauma occasioned thereby. The miscarriage occurred within three weeks of the incident, during which time no intervening cause existed to break the chain of causation between Defendants' conduct and the loss of the child.

59. Pursuant to Wis. Stat. § 895.04(1), Plaintiff Alihya Natalie Johnson, as the mother of the deceased unborn child, brings this wrongful death action on her own behalf and as next friend on behalf of the minor siblings of the deceased.

14

60.     Pursuant to Wis. Stat. § 895.04(4), Plaintiff Alihya Natalie Johnson is entitled to damages not exceeding $500,000.00 for loss of society and companionship resulting from the wrongful death of her unborn child.

61.     Pursuant to Wis. Stat. § 895.04(4), Plaintiffs Sibling 1 and Sibling 2, who were minors at the time of their sibling's death, are each entitled to damages not exceeding $500,000.00 for loss of society and companionship of their deceased unborn sibling.

62.     As a further direct and proximate result of Defendants' conduct, Plaintiff Alihya Natalie Johnson has suffered and continues to suffer past and future pain and suffering, emotional anguish, grief attendant to the loss of her unborn child, lost wages in the amount of $875.00, and medical expenses in the amount of $5,097.00, together with such additional damages as shall be established at trial.

## COUNT VI
### False Imprisonment
### (Against All Individual Defendants)

63.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.     In accordance with the principles set forth in the Restatement (Second) of Torts Section 35, false imprisonment occurs when an actor intentionally confines another person within fixed boundaries without lawful authority, and the confined person is either conscious of the confinement or harmed by it. The confinement may be accomplished through physical force, threats of force whether express or implied, or any other conduct that reasonably causes the victim to submit out of apprehension of force.

65.     To establish false imprisonment under Wisconsin law, a plaintiff must demonstrate that the confinement was intentional, unlawful, and unconsented. *Herbst v. Wuennenberg*, 83 Wis. 2d

15

768, 266 N.W.2d 391 (1978). There is no cause of action where confinement occurs with the free and voluntary consent of the person confined.

66.     Each element of false imprisonment is satisfied on the facts alleged herein. Defendants intentionally placed Ms. Johnson in handcuffs and confined her within the rear seat of a police squad car. The confinement was accomplished through the direct application of physical force and through the exercise of police authority, which Ms. Johnson had no practical ability to resist. Ms. Johnson was at all times fully conscious of her confinement and suffered both physical injury and severe emotional distress as a direct result thereof.

67.     The confinement was unlawful in its entirety. Ms. Johnson had committed no criminal offense, was not suspected of any crime, and was subject to no valid arrest warrant or detention order. No lawful authority existed at any point during the detention to justify her confinement. Defendants acted with full knowledge that no such authority existed, as evidenced by Ms. Johnson's repeated and explicit protests that her detention was unlawful, protests which officers acknowledged and disregarded.

68.     The confinement was unconsented. Ms. Johnson objected to her detention from its inception and continued to protest throughout the more than forty minutes during which she was confined. Any argument that Ms. Johnson acquiesced in her confinement is foreclosed by the undisputed facts. Her compliance with officers' directives during the detention was the product of coercion and fear for the safety of her unborn child and minor children, not of free and voluntary consent. Coerced submission does not constitute consent within the meaning of Wisconsin false imprisonment law.

69.     Defendant City of Milwaukee is liable for the false imprisonment of Ms. Johnson under the doctrine of respondeat superior, as the individual Defendants were acting within the scope of

16

their employment as Milwaukee Police Department officers at all relevant times. Unlike federal claims under 42 U.S.C. § 1983, Wisconsin state law permits direct respondeat superior liability against a municipal employer for the tortious conduct of its employees committed within the scope of their duties.

70.     As a direct and proximate result of Defendants' unlawful confinement of her person, Ms. Johnson suffered physical injury from being handcuffed and restrained, severe emotional distress, the physical consequences that proximately caused the miscarriage of her unborn child, lost wages, medical expenses, and all other damages alleged herein.

## COUNT VII
### Negligence and Gross Negligence
### (Against All Defendants)

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     Defendants owed Ms. Johnson a duty of reasonable care in the exercise of their law enforcement functions, including a duty to refrain from causing foreseeable physical harm to individuals in their custody and to respond appropriately to known medical emergencies arising during detention.

73.     Defendants breached that duty by detaining Ms. Johnson without lawful cause, physically restraining a pregnant woman in a manner causing her documented pain and distress, ignoring her repeated complaints of abdominal discomfort, failing to summon or offer medical assistance, and prolonging her confinement despite actual knowledge of the risk to her health and the life of her unborn child.

74.     Under Wisconsin law, gross negligence is distinct from ordinary negligence and requires either a willful intent to injure or a wanton and reckless disregard for the rights and safety of

17

others that the law equates to an intent to injure. *Jorgenson v. Chicago and North Western Railway Co.*, 153 Wis. 108 (1913). Defendants' conduct satisfies this standard. Officers had actual, contemporaneous knowledge that Ms. Johnson was pregnant and in escalating physical distress. Their deliberate decision to prolong her confinement, withhold medical attention, and dismiss her complaints with institutional indifference constitutes wanton and reckless disregard for her safety rising to the level of gross negligence under Wisconsin law.

75. Pursuant to Wis. Stat. § 895.045, contributory negligence does not bar recovery where the plaintiff's negligence does not exceed that of the defendant. Ms. Johnson bears no comparative fault for the injuries sustained, as her presence at the scene was entirely lawful and her conduct throughout the detention was the product of coercion rather than voluntary choice.

76. As a direct and proximate result of Defendants' negligence and gross negligence, Ms. Johnson suffered a miscarriage, the wrongful death of her unborn child, physical injury, severe emotional distress, lost wages, medical expenses, and all other damages alleged herein.

## COUNT VIII
### Intentional Infliction of Emotional Distress
### (Against All Individual Defendants)

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. A claim for intentional infliction of emotional distress requires that the defendant's conduct was extreme and outrageous, that the defendant intended to cause emotional distress or acted in reckless disregard of the probability of causing such distress, and that the plaintiff suffered severe emotional distress as a direct and proximate result of that conduct.

79. Defendants' conduct on April 3, 2023, was extreme and outrageous in every material respect. Officers detained a visibly pregnant woman without lawful cause, placed her in

18

handcuffs, and confined her in the rear of a squad car in a physically contorted position for a period exceeding forty minutes. Throughout that period, Ms. Johnson repeatedly informed officers that she was pregnant, that she was in significant physical pain, and that her detention was unlawful. Officers disregarded each and every one of those protests without exception.

80.     Rather than releasing Ms. Johnson or summoning medical assistance, Defendants compelled her, under the coercive conditions of her unlawful confinement, to place a telephone call to a third party to facilitate his arrest and to surrender the password to her personal cellular device. Ms. Johnson complied with each demand not as a matter of free will but out of fear for the life of her unborn child and the welfare of her minor children. Defendants exploited her vulnerability as a pregnant woman in custody to extract her cooperation, conduct that no reasonable person could characterize as anything other than a deliberate and unconscionable abuse of governmental authority.

81.     When Ms. Johnson continued to report abdominal pain following the resolution of the standoff, an officer responded only that the officers had done what they had to do and that Ms. Johnson should understand that. This response, delivered to a pregnant woman in documented physical distress who had been unlawfully confined for over forty minutes, reflects not merely indifference but a conscious and calculated dismissal of her suffering. It is precisely this quality of deliberate disregard for the physical and emotional wellbeing of a person in custody that distinguishes extreme and outrageous conduct from ordinary negligence or discourtesy.

82.     Defendants either specifically intended to cause Ms. Johnson severe emotional distress through their conduct or, at minimum, acted in reckless disregard of the near certainty that handcuffing a pregnant woman without cause, ignoring her pain, exploiting her cooperation under

19

duress, and dismissing her suffering with institutional indifference would cause her severe emotional distress. Both prongs are independently satisfied on the facts alleged herein.

83. As a direct and proximate result of Defendants' extreme and outrageous conduct, Ms. Johnson suffered severe emotional distress, profound grief arising from the subsequent loss of her unborn child, ongoing psychological anguish, and all other damages alleged herein.

## DAMAGES

84. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages including but not limited to:

    a. Wrongful death of Ms. Johnson's viable unborn child;

    b. Loss of Society and Companionship (Alihya Natalie Johnson): $500,000.00;

    c. Loss of Society and Companionship (Sibling 1): $500,000.00;

    d. Loss of Society and Companionship (Sibling 2): $500,000.00;

    e. Past and future pain and suffering;

    f. Past medical expenses: $5,097.00;

    g. Past lost wages: $875.00;

    h. Future medical expenses;

    i. Severe emotional distress and mental anguish;

    j. Violation of constitutional rights; and

    k. Such other and further damages as may be proven at trial.

85. Because the individual Defendants acted with deliberate indifference, malice, and reckless disregard for Ms. Johnson's constitutional rights, Plaintiffs are entitled to punitive damages against the individual Defendants in an amount to be determined by the jury.

86. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Wrongful death damages including loss of society and companionship pursuant to Wis. Stat. § 895.04(4) in the amount of $500,000.00 for each of the three Plaintiffs;

C. Punitive damages against the individual Defendants;

D. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable law;

E. Pre- and post-judgment interest as permitted by law; and

F. Such other and further relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted this 1st day of April 2026.

Respectfully submitted,

KURTER LAW OFFICES
By: /s/ Imran S. Kurter
Wisconsin State Bar No. 1096182
Attorney for Plaintiff
10012 W Capitol Drive
Milwaukee, WI 53222
(414) 368-8181

21

Imran@Kurterlaw.com

22